IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARRARO & ASSOCIATES, INC.
AND KATO & ASSOCIATES,

        Plaintiffs,

vs.                                            Civ. No. 02-601 MV/RLP

KVAERNER PROCESS, KVAERNER US, INC.,
AND AKER-KVAERNER,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue, filed July 10, 2002 **[Doc. No. 2]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that Defendants' motion is well-taken and will be **GRANTED.**

## BACKGROUND

Kvaerner Process Services, Inc. ("KPSI") had a consulting agreement with Csaba Kato, who was an official of the Venezuelan government. At some point, Mr. Kato suggested that KPSI might be interested in working with Joseph Carraro, another individual with contacts in the Venezuelan government, in order to further its efforts to seek new Venezuelan business opportunities. According to Defendants, there was a meeting between Mr. Carraro and KPSI representatives in Houston, Texas where the parties discussed a possible working relationship. Also according to Defendants, over the course of several months, KPSI representatives traveled to Venezuela for meetings at which they were accompanied by Mr. Kato and Mr. Carraro.

According to Plaintiffs, the parties entered into an agreement[1] whereby: (1) Mr. Carraro was to set up meetings between KPSI and Venezuelan government officials; (2) KPSI was to pay Carraro & Associates a retainer of $100,000 plus expenses and 2.5% of the total contract price between KPSI and Venezuela; and (3) Kato & Associates was to receive .5% of the 2.5% to be received by Carraro & Associates. Also according to Plaintiffs, while Mr. Carraro fulfilled his duties under the agreement, KPSI "backed out" of the deal with Venezuela and refused to honor its promises to Plaintiffs.

As a result, Carraro & Associates, Inc. and Kato & Associates brought the instant diversity action for breach of contract, tortious interference, negligent misrepresentation, and fraud against KPSI, Kvaerner U.S. Inc. ("Kvaerner U.S.") and Aker-Kvaerner. Plaintiff Carraro & Associates is a New Mexico corporation with its principal place of business in New Mexico. Plaintiff Kato & Associates is a sole proprietorship owned by Csaba Kato, a citizen of Venezuela. Defendant KPSI is a Texas corporation with its principal place of business in Houston, Texas. Defendant KPSI is a subsidiary of Kvaerner U.S., which is a Delaware corporation with offices in Houston, Texas and is licensed to do business in New Mexico. According to Defendants, there is no corporate entity called Aker-Kvaerner and Plaintiffs have provided no evidence to the contrary. In the Complaint, Plaintiffs allege that this Court has personal jurisdiction over all Defendants under New Mexico's long-arm statute, NMSA 1978, §38-1-16(A) (1971).

On July 10, 2002, Defendants filed the instant motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue, respectively. In the alternative, Defendants request pursuant to 28 U.S.C.

---

[1] There is no signed, written agreement between the parties.

§1406(a) that this Court transfer venue of this case to the Southern District of Texas. On September 17, 2002, Plaintiffs filed their response in opposition. Defendants' reply followed on September 17, 2002.

**STANDARD**

The plaintiff carries the burden of establishing that the court has jurisdiction over the defendant. *See First Mortgage Corp. v. State Street Bank and Trust Co.*, 173 F. Supp.2d 1167, 1170 (D. Utah 2001). Upon the defendant's filing of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "must make only a prima facie case of personal jurisdiction in order to defeat the motion." *Id.* This may be accomplished by a well-pleaded complaint or by supporting affidavits. *See Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facia showing is sufficient notwithstanding the contrary presentation by the moving party." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (citing *Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert. denied*, 471 U.S. 1010 (1985)).

Similarly, upon the defendant's challenge to venue under Rule 12(b)(3), the plaintiff carries the burden of showing that venue is proper in the forum state. *See Electronic Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F. Supp. 1172, 1175 (D. Kan. 1996). "The procedure to decide a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction." *Id.*

**DISCUSSION**

I.   <u>Personal Jurisdiction</u>

In determining whether a federal court has personal jurisdiction over nonresident Defendants in a diversity action, the Court must apply the law of the forum state. *See Rambo*, 839 F.2d at 1416. New Mexico's long-arm statute provides in relevant part:

> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
> (1) the transaction of any business within this state;
> . . .
> (3) the commission of a tortious act within this state.

NMSA 1978, §38-1-16(A) (1971). This provision "extends the jurisdictional reach of New Mexico courts as far as constitutionally possible." *Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 48 P.3d 50, 54 (2002). In order for the Court's exercise of long-arm jurisdiction to be constitutional, "the defendant must have sufficient minimum contacts with the forum state so that permitting the action will not violate 'traditional conception[s] of fair play and substantial justice.'" *Id.* (citing *International Shoe v. Washington*, 326 U.S. 310, 320 (1945)). Minimum contacts satisfying due process are established "where the defendant has a connection with the forum state and has acted in the state in such a manner that [he or she] 'should reasonably anticipate being haled into court there.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Essential to this analysis is whether there has been "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The unilateral activity of Plaintiffs who claim a

relationship with nonresident Defendants is not sufficient. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). Rather, the relevant focus is "'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citation omitted).

In a case involving multiple defendants, contacts of any one of those defendants cannot be aggregated to support jurisdiction over the rest. *See Rambo*, 839 F.2d at 1417 n.3. Instead, "'due process requirements for personal jurisdiction must be met as to each individual Defendant.'" *Id.* (citation omitted).

In order to determine whether personal jurisdiction exists over nonresident Defendants, the Court must apply a three-part test, which consolidates the constitutional and statutory requirements of the New Mexico long-arm statute. *See Caba Ltd. Liab. Co. v. Mustang Software, Inc.*, 127 N.M. 556, 561, 984 P.2d 803, 808 (Ct. App. 1999). Applying this test, the Court must determine whether: (1) the acts of Defendants are specifically set forth in the long-arm statute; (2) Plaintiffs' cause of action arises out of and concerns such alleged acts, and (3) Defendants' acts establish minimum contacts to satisfy constitutional due process concerns. *See Id.* In applying this test, the analysis of whether Defendants transacted business or committed a tortious action within New Mexico "merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns." *Tercero*, 48 P.3d at 54.

Whether a party transacted business in New Mexico "must be determined by the facts in each case." *Telephonic, Inc. v. Rosenblum*, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975). "'Transaction of any business' under the long-arm statute has been defined as, 'doing a series of similar acts for the purpose of thereby realizing a pecuniary benefit, or otherwise accomplishing an

object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts.'" *Tercero*, 48 P.3d at 55 (citation omitted).  Whether Defendants purposefully availed themselves of the privilege of conducting business within New Mexico "involves the determination of whether the activities in question amount to a purposeful act by it to participate in the forum state and avail itself of the benefits and protections of our laws." *Id.*  While "the 'transaction of any business' element of the long-arm provision is sufficient to fulfill the due process standard of minimum contacts, . .. 'this is true only if the cause of action arises from the particular transaction of business, and the minimum contacts were purposefully initiated by the defendant.'"  *Id.* (citation omitted).

In the instant case, Plaintiffs allege that Defendants transacted business in New Mexico by making calls to Mr. Carraro at a New Mexico telephone number, wiring money to an account in New Mexico, mailing money and a proposed contract to New Mexico,  paying various expenses which originated in New Mexico, contracting with a citizen of New Mexico and agreeing to make payments in New Mexico.  The Court finds that these actions are insufficient to establish that Defendants transacted business in New Mexico within the meaning of the long-arm statute or that Defendants purposefully initiated minimum contacts with New Mexico.  First, "a nonresident does not engage in business in New Mexico when it enters into contract with a New Mexico resident by mail, fax, and telephone without ever entering the state." *Caba Ltd. Liab. Co.*, 127 N.M. at 562, 984 P.2d at 809; *see also Salas v. Homestake Enterprises, Inc.*, 106 N.M. 344, 742 P.2d 1049 (1987) (neither telephone call inviting plaintiff to come to Colorado to negotiate nor sending two documents to plaintiff at address in New Mexico constituted business transaction). Moreover, "the use of mail and telephone services to contact a New Mexico resident from out of

state is insufficient to satisfy the 'purposeful availment' prong of a minimum-contacts analysis." *DeVenzeio v. Rucker, Clarkson & McCashin*, 121 N.M. 807, 809, 918 P.2d 723, 725 (Ct. App.), *cert. denied*, 121 N.M. 783, 918 P.2d 369 (1996); *see also Sanchez v. Church of Scientology of Orange County*, 115 N.M. 660, 664, 857 P.2d 771, 775 (1993). Similarly, Plaintiffs' directions to Defendants to wire money into a certain account and mail payments to a certain address constitute unilateral actions by Plaintiffs which are insufficient to establish that Defendants purposefully availed themselves of New Mexico law. *See Far West Capital, Inc.*, 46 F.3d at 1076 (plaintiff's unilateral choice of Utah institution to administer escrow account was irrelevant to defendants' jurisdictional contacts with Utah).

Plaintiffs do not allege that the business transaction between Plaintiffs and Defendants originated in New Mexico or that Defendants solicited, advertised or otherwise initiated the business transaction with Plaintiffs in New Mexico. *See Caba Ltd. Liab. Co.*, 127 N.M. at 564, 984 P.2d at 811. Similarly, Plaintiffs do not allege that the business relationship contemplated by the parties was to involve any activity in New Mexico. To the contrary, the subject of the instant dispute is an alleged agreement whereby Plaintiffs were to receive consulting fees in exchange for facilitating meetings between Defendants and government officials *in Venezuela*. Significantly, the initial meeting between Mr. Carraro and Defendants took place in Houston, Texas and all subsequent meetings attended by Plaintiffs and Defendants were either in Houston or Venezuela. Accordingly, it is clear that any calls, wiring of money or mailing of proposed contracts and payments by Defendants to New Mexico were a continuation of business negotiations with Plaintiffs rather than the initiation of a deal by Defendants. *See Id.* As Defendants' communications with Plaintiffs in New Mexico thus were ancillary rather than central to the

alleged agreement at issue in this case, these communications do "not rise to the level of a purposeful availment of opportunities in New Mexico." *DeVenzeio*, 121 N.M. at 811, 918 P.2d at 727.

Plaintiffs also argue that the fact that Kvaerner U.S. is licensed to do business in New Mexico is sufficient to establish that Defendants transacted business in the forum state and purposefully initiated minimum contacts here. First, New Mexico's long-arm statute "requires that the pled cause of action arise from the *same* transaction of business by which the nonresident-defendant submitted to the jurisdiction of the forum state." *Caba Ltd. Liab. Co.*, 127 N.M. at 565, 984 P.2d at 812 (emphasis in original). "That Defendant[s] may have had other contacts with New Mexico from which no pled cause of action arises does not satisfy this jurisdictional prerequisite." *Id.* Similarly, while a nonresident entity's "extensive, systematic and continuous" activities within the state may be sufficient to meet the minimum contacts test, if such activity is "less extensive, the cause of action must arise out of or be connected with the defendant's contacts related to the forum" in order to meet the due process requirements. *Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 148, 717 P.2d 596, 601 (Ct. App.), *cert. quashed sub nom.*, *Visarraga v. Littlejohn's Equipment Co., Inc.*, 104 N.M.137, 717 P.2d 590 (1986). Here, Defendants assert through sworn affidavits that Kvaerner U.S. was not engaged in any business in New Mexico at the time that Plaintiffs' dispute arose. Plaintiffs have provided no evidence to refute these sworn statements. As there thus is no evidence that Kvaerner U.S. transacted *any* business under their New Mexico license, there certainly is no evidence that the New Mexico activities of Kvaerner U.S. were "extensive, systematic and continuous," thereby affording this Court jurisdiction on a cause of action unrelated to Defendants' in-state activities. *Id.*

Next, Plaintiffs contend that this Court has personal jurisdiction over Defendants because they committed tortious acts which concluded in New Mexico and which resulted in damages occurring in New Mexico.  To determine whether Defendants committed a tortious act, "we must equate the 'tortious act' which [Defendants are] alleged to have committed with minimum contacts to determine if due process has been satisfied." *DeVenzeio*, 121 N.M. at 810, 918 P.2d at 726.  The fact that an alleged tort may have been completed in New Mexico in itself is insufficient, as the minimum contact requirement must be met.  *Visarraga*, 104 N.M. at 148, 717 P.2d at 601.  As with the transaction of business analysis, due process requirements are satisfied only if Defendants have "purposefully availed [themselves] of the privilege of conducting activities in New Mexico." *Id.*

In the Complaint, Plaintiffs allege that Defendants tortiously interfered with existing contractual relations and prospective contractual relations between Plaintiffs and other third parties.  As set forth above, however, Defendants' contacts with New Mexico were essentially limited to telephone calls, wires and mailings in connection with continued negotiations of a business deal that was initiated in Texas and involved development of business opportunities in Venezuela.  Defendants' communications with New Mexico were incidental to the negotiations which are the subject of Plaintiffs' allegations of tortious interference.  Accordingly, these communications are insufficient to establish that Defendants availed themselves of the privilege of conducting activities in New Mexico.  *See DeVenzeio*, 121 N.M. at 811, 918 P.2d at 727.  Under these circumstances, the fact that it may have been foreseeable to Defendants that tortious acts committed in pursuing their Venezuela business opportunities would affect Plaintiffs' economic

status in New Mexico is not sufficient to extend this Court's personal jurisdiction over Defendants. *See Id.*

Plaintiffs have failed to establish that Defendants have sufficient minimum contacts with New Mexico to invest this Court with personal jurisdiction over them, either on the basis of their transaction of business or the commission of a tortious act. Moreover, the contacts of Defendants in this state are not sufficient to meet the requirements of due process. Accordingly, Defendants are not subject to this Court's personal jurisdiction under New Mexico's long-arm statute.

II.  Venue

Pursuant to 28 U.S.C. §1391(a), a diversity action is properly brought only in:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In the instant case, Defendants do not reside in New Mexico. As set forth above, a substantial part of the events giving rise to Plaintiffs' claims did not occur in New Mexico. Also as set forth above, Defendants are not subject to personal jurisdiction in this district. Accordingly, the Court concludes that venue in this district is improper.

The Court next must determine whether this action should be dismissed or transferred to a district where venue and personal jurisdiction are proper. "It is well-established that the court, in the interest of justice, may cure improper venue by transferring the case to 'any district or division in which it could have been brought.'" *Electronic Realty Assoc., L.P.*, 935 F. Supp. at 1177 (citing 28 U.S.C. §1406(a)). Specifically, 28 U.S.C. §1406(a) provides: "The district court of a

district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

The Court finds that the ends of justice require that this case be transferred to the Southern District of Texas. Plaintiffs do not dispute that personal jurisdiction and venue would be proper in the Southern District of Texas. Accordingly, the Court will grant Defendants' alternative motion to transfer the instant action to the United States District Court for the Southern District of Texas.

## CONCLUSION

For the reasons set forth above, this Court does not have personal jurisdiction over Defendants. Similarly, venue is not proper in this district. In the interests of justice, the Court will transfer the instant case to the Southern District of Texas.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, or, in the Alternative, Motion to Transfer Venue, filed July 10, 2002 **[Doc. No. 2]** is granted.

**IT IS FURTHER ORDERED** that this case be transferred to the Southern District of Texas.

**DATED** this 29th day of September, 2003.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for Plaintiffs:

Kent Winchester, Esq.

Attorneys for Defendants:

Richard C. Civerolo, Esq.
Lisa Entress Pullen, Esq.